```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS
 2

 3      UNITED STATES OF AMERICA,         )
                                          )
 4              Plaintiff                 )
                                          )
 5          -VS-                          ) Criminal No. 05-10304-GAO
                                          ) Pages 1 - 13
 6      JULIO CARTAGENA, also known as    )
        Triste, et al,                    )
 7                                        )
                Defendants                )
 8

 9                         MOTION HEARING

10
              BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
11                   UNITED STATES DISTRICT JUDGE

12

13      A P P E A R A N C E S:

14         NEIL J. GALLAGHER, JR., ESQ., Assistant United States
        Attorney, Office of the United States Attorney, 1 Courthouse
15      Way, Boston, Massachusetts, 02210, for the Plaintiff.

16         ALAN D. ROSE, SR., ESQ., Rose, Chinitz & Rose,
        One Beacon Street, 4th Floor, Boston, Massachusetts, 02108,
17      for the Defendant.

18                                    United States District Court
                                      1 Courthouse Way, Courtroom 9
19                                    Boston, Massachusetts  02210
                                      November 16, 2012, 11:09 a.m.
20

21

22

23              LEE A. MARZILLI
              OFFICIAL COURT REPORTER
24           United States District Court
             1 Courthouse Way, Room 7200
25              Boston, MA  02210
                  (617)345-6787
```

```
 1                    P R O C E E D I N G S
 2          THE CLERK:  For a motion hearing, the case of United
 3  States v. Cartagena, Docket 05-10304.  Would counsel identify
 4  yourselves for the record.
 5          MR. GALLAGHER:  Good morning, your Honor.  Neil
 6  Gallagher for the United States.
 7          MR. ROSE:  Good morning, your Honor.  Alan Rose for
 8  the defendant.
 9          THE COURT:  Okay.  This is argument on the motion
10  pursuant to 28 U.S. Code 2255.
11          MR. ROSE:  That's correct, your Honor.  So, your
12  Honor, the procedural history is set forth in the briefs and in
13  my affidavit and the attachments to the affidavit.  The
14  affidavit includes the superseding indictment, the plea
15  hearing, and the disposition.
16          In short, Cartagena was indicted for three counts:
17  conspiracy to distribute heroin, maintaining a house for the
18  purpose of drug distribution, and conspiracy to engage in money
19  laundering.  Your Honor, in reviewing once again the
20  superseding indictment and Mr. Gallagher's factual basis at the
21  plea hearing, and reading also the cases dealing with the
22  *Santos*-related issues, it's important to observe the merger
23  problem that exists in this case.  That is, the activity that
24  is said to constitute the money laundering, which is sending
25  money to South America to pay for drugs, is the very activity
```

that forms the basis for Cartegena's involvement in the drug distribution offense, which I believe is Count 3 in the indictment. I want to come back to that merger issue in a minute when I'm discussing the *Santos* opinion.

Your Honor, the conviction here on the money laundering count had an effect on the Sentencing Guideline range. With the money laundering conviction, the Sentencing Guideline range was 188 to 235 months. By agreement with the government, the government was obligated to recommend, and did recommend, the lower end of whatever the Court found the Sentencing Guideline range to be. My memory, your Honor, is -- I could stand to be corrected, but I believe that Mr. Gallagher actually recommended 180 months, which was just short of the Sentencing Guideline range as determined by the Court.

So just to recap on that point, with the money laundering conviction, the SGR was 188 to 235. Without the money laundering conviction, the SGR would have been 151 to 188 months.

The Court sentenced Cartagena to 150 months, which was 38 months below the 188 months that was the bottom of the SGR of 188 to 235, as calculated by this Court; and by my logic, your Honor, it's entirely possible that if the SGR were 151 to 188 months, the Court might have sentenced my client to the mandatory ten years, or 120 months. And that's a dramatic difference, ten years versus twelve and a half years, and,

```
 1   frankly, your Honor, it's that magnitude of difference that
 2   impelled us to file the 2255 petition.
 3           We rely, as the Court knows, on the Santos case.  In
 4   Santos, the Supreme Court's plurality opinion ruled that the
 5   term "proceeds," as used in the money laundering statute, means
 6   profits, not gross revenues or gross receipts.  Justice Scalia
 7   explained that the term "proceeds" can mean either profits or
 8   revenue.  He said either one of those would be logical, would
 9   be something that you might find in the dictionary, and made
10   sense looking at the statutes.  Therefore, he found that the
11   term "proceeds" was ambiguous; and applying the rule of lenity,
12   Justice Scalia, in an opinion joined by Justices Souter,
13   Thomas, and Ginsberg, wrote that the tie goes to the defendant.
14   Justice Scalia wrote that "An interpretation of 'proceeds' that
15   means profits will always be more defendant-friendly than will
16   the definition of 'proceeds' defined to be gross revenue."
17           Now, as applied to this case, we contend that the
18   Santos opinion means that the indictment is insufficient.  The
19   government's evidence, as set forth in its plea hearing factual
20   basis, is also insufficient.  The money laundering conviction
21   must be set aside, and the disposition based on it should also
22   be set aside.  The superseding indictment here, Count 8, which
23   is the money laundering count, says nothing about profits, nor
24   did the government say anything about profits at the plea
25   hearing in the course of Mr. Gallagher's presenting the factual
```

basis for the plea.

Now, the government says here, well, but the *Santos* opinion only garnered four votes: Scalia, Souter, Thomas, Ginsberg. But I contend that we have to go beyond those four votes and look at the opinions of Justice Stevens, who concurred in the judgment, although not in the reasoning, but I think we also need to look at the opinion of Justice Breyer. And looking at Stevens' opinion, he said that a transaction that is a -- he said, talking there, of course, about a gambling indictment, but he said, "The revenue generated by a gambling business that is used to pay the essential expenses of operating that business is not proceeds within the meaning of the money laundering statute." And he also said that "Allowing the government to treat the mere payment of the expense of operating an illegal gambling business as a separate offense is, in practical effect, tantamount to double jeopardy, which is particularly unfair in this case because the penalties for money laundering are substantially more severe than those for the underlying offense of operating a gambling business."

So again, your Honor, I think looking at the *Santos* opinions, we need to go beyond the very clear opinion of Justices Scalia, Souter, Thomas, and Ginsberg that proceeds means profits. We have to add to those four, I contend, the opinion of Justice Stevens. And then beyond that, your Honor, I think we need to look at the language in Justice Breyer's

 1  opinion, which although he dissents, there's language in his
 2  opinion which I think is highly relevant in this context
 3  because he raises what's called the "merger problem."  And my
 4  understanding of, you know, the merger problem is where there's
 5  an essential element of one offense, and the defendant is also
 6  indicted, convicted, and sentenced essentially additionally on
 7  the basis of the same conduct as is an essential part of the
 8  main offense; here, the drug offense.
 9          And Justice Breyer says, "A drug offense normally
10  involves payment for drugs."  And then he goes on to cite how
11  the Tenth Circuit deals with the issue, citing *United States v.*
12  *Edgmon*, E-d-g-m-o-n, a Ninth Circuit opinion in 1991.  And
13  quoting the Tenth Circuit in *Edgmon*, Justice Breyer says,
14  "Congress aimed the crime of money laundering at conduct that
15  follows in time the underlying crime, rather than to afford an
16  alternative means of punishing the prior specified unlawful
17  activity."  And then Justice Breyer goes on to say in his
18  *Santos* opinion, "The Tenth Circuit has simply held that the
19  money laundering offense and the underlying offense that
20  generated the money to be laundered must be distinct in order
21  to be separately punishable."
22          So again, your Honor, you know, pulling together the
23  opinions joined in by Scalia, Souter, Thomas, Ginsberg, looking
24  at Justice Stevens' concurrence, although not in the logic of
25  the opinion written by Justice Scalia, and adding to it the

1  language from Justice Breyer citing the Tenth Circuit's
2  opinion, we think that applying Santos in this case leads to
3  the conclusion that the money laundering offense charged
4  against Mr. Cartagena essentially charged him with participation
5  in the drug conspiracy.  That is to say, what he was accused of
6  in money laundering was sending money to Colombia, but that's
7  part and parcel of the drug offense.  So we have what the
8  justices referred to as a very serious merger problem, which
9  can only be -- Justice Scalia said that the merger issue he
10 thought can only be addressed by defining proceeds to mean
11 profits and not defining it to mean gross receipts.
12         So one final point, your Honor.  The government points
13 out in a footnote that after the *Santos* opinion, Congress
14 amended the money laundering statute to make clear that the
15 term "proceeds" includes gross receipts.  My position is that
16 Congress's later amendment of the statute to define proceeds to
17 include gross receipts proves Justice Scalia's main point,
18 which is that the term "proceeds" is ambiguous and needs to be
19 defined in a way that, in Justice Scalia's words, was "most
20 friendly to the defendant."
21         Therefore, your Honor, our position is that the money
22 laundering indictment Count 8 and the facts supporting it are
23 insufficient.  The conviction based on it should be set aside,
24 and the sentence based on the additional two levels should be
25 set aside, and the defendant should be resentenced.  Thank you.

1        THE COURT: Mr. Gallagher?

2        MR. GALLAGHER: Your Honor, a couple things I disagree

3   with factually, and that is, the indictment charged two

4   objects: concealment and also promotional money laundering.

5   While it's true that there was transactions from

6   Mr. Cartagena's wire remitter business to Colombia, that was

7   done at the behest of Luis Lopez to pay for the heroin.

8        The other part of this conspiracy was that there were

9   a substantial amount of wire transfers to the Dominican

10  Republic that were done in such a manner, from the plea

11  transcripts and from the PSR, that were done in a way to

12  conceal the nature and the ownership of the funds. What

13  specifically was being done is that large amounts of money was

14  being wire transferred to the Dominican Republic from where the

15  defendant was from, and the cases, you know, make that

16  distinction between concealment money laundering and

17  promotional money laundering.

18        *Santos* was a promotional money laundering case; and

19  while the First Circuit hasn't decided this issue directly, the

20  Tenth Circuit has said in a couple cases that *Santos* is limited

21  to gambling context. The payment of the winnings of a gambling

22  operation to the betters is so intertwined with the actual

23  underlying offense, there's a merger problem.

24        Here there is a whole other universe of evidence

25  independent of the defendant's involvement in the laundering.

```
 1  There was wiretaps from the defendant's phone.  There were drug
 2  transactions at a stash house.  There's this whole other body
 3  of evidence independent of the laundering conviction that
 4  supports, and the idea that these two events merged to say that
 5  they're different offenses or the same offense is just not what
 6  the facts show.
 7          A number of other circuits, including the Ninth
 8  Circuit, the Sixth Circuit, the Eighth Circuit, the Eleventh
 9  Circuit, and the Third Circuit, and most recently the Second
10  Circuit in a case I didn't cite, came out afterwards, *U.S. v.*
11  *Quiones*, 635 Fed 3rd, 590, a 2011 opinion, followed Justice
12  Stevens' concurring opinion; and that is that the sale of
13  contraband, it does not create the kind of merger problem that
14  was present in *Santos,* and it declined to apply *Santos* to cases
15  where the proceeds are the gross receipts from a drug
16  trafficking operation.
17          The First Circuit has also indicated in *Garcia v.*
18  *Pastrana*, 584, 351, that there's some question, quoting, "There
19  is some question as to the holding of *Santos,* since
20  Justice Stevens, the fifth and deciding vote, suggested in
21  concurrence that the holding may vary by offenses and the
22  legislative history."
23          There's also a case named *Bucci* in the First Circuit
24  in which -- the case is out of the District of Massachusetts --
25  where it was held not to be plain error to not make that
```

1  distinction in the jury instructions, to define "proceeds" in a
2  drug case as profits.
3        And what we're really talking about here, Judge, is a
4  separate offense, is that it is not just the promotional part
5  of this, that the sending the drug money to the source of
6  supply in Colombia, but also the offense of -- take what really
7  is, you know, most likely from the facts of this the profits of
8  the operation.  You know, drugs are a cash business.  You've
9  got to get that cash to pay for the drugs.  But the wire
10 transfer to the Dominican Republic had nothing to do with
11 paying for expenses, had nothing to do with paying for the
12 heroin.  It was most likely the profits of his business to pay
13 for it to send to family in the Dominican Republic, and that
14 was why it was done with fictitious names, in order to hide the
15 fact that this is how Mr. Cartagena was getting his money from
16 this drug operation.
17       There has been very few -- there's been two cases that
18 have held at all in the District Court that *Santos* applies to
19 drug cases.  Every other case in the Court of Appeals have
20 held -- have followed Justice Stevens' decision, and I ask the
21 Court to do the same.
22       THE COURT:  Okay, anything else?
23       MR. ROSE:  Very briefly, your Honor.  We also rely on
24 the *Hedlund* case, H-e-d-l-u-n-d.  I agree with Mr. Gallagher
25 that there is not yet any specific on-point ruling from the

1   First Circuit, but the *Hedlund* case, which is a District Court
2   case in California cited in our brief, is a case involving
3   marijuana and money laundering; and the court there said that
4   the factual basis for the money laundering conviction is that
5   *Hedlund* used a portion of the proceeds from the marijuana to
6   make a mortgage payment on the building used to grow the
7   marijuana.  The court said that "Under any accounting system,
8   such a mortgage payment is a business expense.  It is not a
9   part of the profits of the business."  And the court -- that's
10  Judge Jensen in the District Court for the Northern District of
11  California -- went on to say that "If the *Santos* rule, that the
12  word 'proceeds' is limited to the profits of the illegal
13  activity, applies to the *Hedlund* case, then the financial
14  transaction in *Hedlund* does not involve the profits of the
15  illegal activity, and the money laundering conviction must be
16  vacated."  And that's exactly what the court did.
17          I would also just point out, your Honor, that there's
18  no evidence in this case establishing what the profits of the
19  drug transactions were.  My understanding of the evidence was
20  simply that the money that was wired to South America was for
21  the very purpose of paying for the drugs.  That seemed to be
22  the essence of what the government's position was and the
23  factual basis at the plea hearing.
24          THE COURT:  Wouldn't it be a fair inference that at
25  least some portion of that was profit?

1          MR. ROSE:  We don't know, your Honor.  There's no
2     evidence.
3          THE COURT:  You think that the ultimate source of the
4     drugs was supplying at a zero profit level, margin?
5          MR. ROSE:  Your Honor, if that were the case, if in
6     every single case a jury were allowed to infer from the
7     presence of receipts that there must have been some profit from
8     those receipts, there would be no reason for Justice Scalia and
9     the other Justices to be struggling with the difference between
10    the two terms.
11         THE COURT:  Well, I guess the point is, the inference
12    might be justified and stronger in some cases and not others.
13    I mean, that's sort of Justice Stevens' point, that there might
14    be some circumstances -- he didn't address this particular
15    point, but his case-by-case approach in a sense or
16    circumstance-by-circumstance approach would leave room for a
17    sensible inference that business was being conducted for
18    profit.
19         MR. ROSE:  But, again, your Honor, the essence of
20    Justice Scalia's opinion seems to be that it's the government's
21    burden to prove it, that "proceeds" means profits, and that
22    it's the government's burden to prove that there were indeed
23    profits.  Might that be difficult?  I think Justice Scalia's
24    opinion would be:  That's for Congress to sort out and not the
25    Supreme Court.

```
1              THE COURT:  Okay, thank you.  Anything else?
2              MR. GALLAGHER:  Just the point I made bears repeating,
3    that there were two parts to this, Colombia and the Dominican
4    Republic, and that the money going to the Dominican Republic
5    wasn't to pay for drugs.  It was most likely the profits of the
6    enterprise.
7              THE COURT:  All right, thank you.  I'll take it under
8    advisement.
9              THE CLERK:  All rise.  Court is in recess.
10             (Adjourned, 11:29 a.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                         C E R T I F I C A T E

 2


 3

     UNITED STATES DISTRICT COURT )
 4   DISTRICT OF MASSACHUSETTS    ) ss.
     CITY OF BOSTON               )
 5

 6


 7          I, Lee A. Marzilli, Official Federal Court Reporter,

 8   do hereby certify that the foregoing transcript, Pages 1

 9   through 13 inclusive, was recorded by me stenographically at

10   the time and place aforesaid in Criminal No. 05-10304-GAO,

11   United States of America v. Julio Cartagena, et al, and

12   thereafter by me reduced to typewriting and is a true and

13   accurate record of the proceedings.

14          Dated this 21st day of March, 2013.

15

16

17

18

19
                    /s/ Lee A. Marzilli
20                  _____
                    LEE A. MARZILLI, CRR
21                  OFFICIAL COURT REPORTER

22

23

24

25
```